10

FILED

JAN 13 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 05-15405-A-13K
                                         DC No. JSY-1
BEATA O'BRIEN

CALENDARED                               FINDINGS OF FACT AND
                                         CONCLUSIONS OF LAW
                        Debtor.
_____/

A hearing was held December 14, 2005, on the motion of Hamid
Gholami, Shahla Gholami, Aram Shahmirizadeh, and Julie Moe
("Moving Parties") to dismiss the chapter 13 case of Beata
O'Brien, or in the alternative, for relief from stay.  Following
the hearing, the matter was deemed submitted.[1]  The matter was
continued to January 26, 2006, at 10:30 a.m. for the court to put
on the record its findings of fact and conclusions of law.  This
memorandum contains findings of fact and conclusions of law
required by Federal Rule of Bankruptcy Procedure 7052 and Federal
Rule of Civil Procedure 52.  This is a core proceeding as defined
in 28 U.S.C. §157(b)(2)(A) and (G).

The hearing on the motion had been held initially October
26, 2005.  At that time, the court ordered that the hearing on
December 14th would be the final hearing and that if Moving
Parties wished to proceed with the portion of the motion seeking
dismissal of the case, it would be necessary to notice the motion

_____

[1]The matter was continued to January 26, 2006, at 10:30 a.m.
for the court to put on the record its findings of fact and
conclusions of law.  However, the court is issuing instead these
written Findings of Fact and Conclusions of Law.  The January 26,
2006 hearing date is vacated.

1

84

1  to dismiss to all creditors.  The court also ordered the parties
2  to file and serve memoranda of points and authorities and witness
3  declarations, as well as statements of legal issues and disputed
4  material facts.

5      The proof of service showing timely service of the notice on
6  creditors was filed with the court on December 19, 2005.  All
7  creditors who filed timely proofs of claim were served with
8  notice of the motion.  Therefore, notice of the motion in all its
9  aspects was adequate.

10 Background Facts.

11     This chapter 13 case was filed July 8, 2005.  The debtor
12 scheduled unsecured nonpriority claims of $11,448.  Moving
13 Parties are not listed as creditors in the schedules.  The debtor
14 scheduled real property having a value of $400,000 and personal
15 property having a value of over $100,000.  The primary component
16 of the personal property is cash consisting of funds that had
17 been in a Wells Fargo bank account that was garnished by Moving
18 Parties prior to the filing of the bankruptcy case.

19     The scheduled unsecured nonpriority debt consists of
20 creditors described as open accounts, revolving accounts or
21 installment accounts.  Schedule G shows two car leases, both with
22 GMAC.  One is for a 2004 GMAC SRX with 13,000 miles and a monthly
23 payment of $740.42.  The other is for a 2004 GMC SUV Escalante
24 with 20,000 miles and a monthly payment of $692.  The debtor's
25 husband, Francis O'Brien, is listed as a co-debtor on those
26 leases.

27     In Schedule I, Ms. O'Brien describes her occupation as
28 housewife and her husband as disabled.  Schedule I lists their

2

income as disability, $1,500 per month (the non-debtor spouse)
and "Dependant Spouse W/Two Minor Children," $1,500 (the debtor).
Thus, the total combined monthly income on Schedule I is shown as
$3,000.  The total monthly expenses are shown are $3,406.05.  The
expenses do not include the car lease payments.

The Statement of Financial Affairs shows that the debtor
received $32,437 in wages in 2004 and $39,330 in wages in 2003.
The Schedules of Assets and Liabilities and Statement of Affairs
were executed under penalty of perjury by the debtor on July 8,
2005.

The debtor has filed a chapter 13 plan.  The plan
contemplates payments of $406 each month to the trustee for 36
months.  The plan states that the debtor paid her attorney $315
before the case was filed and has agreed to pay him an additional
$2,185.[2]

According to the plan, the debtor is current on payments to
Washington Mutual, which holds the deed of trust on her
residence, and is also current on the over $1,400 per month in
car lease payments.  Both those amounts are to be paid outside
the plan.  Therefore, the only payments to be made under the plan

---

[2]This statement contradicts the Statement of Rights and
Responsibilities which says that no money has been paid to the
debtor's attorney and that $2,500 is still owed.  It also
contradicts the statement filed under Fed. R. Bankr. Proc. 2016
under which counsel for the debtor certified that he had not been
paid any amount prior to the case being filed.  The chapter 13
plan, the Rule 2016 statement, and the Statement of Rights and
Responsibilities were all filed on July 8, 2005.  The Rule 2016
statement was executed on July 8, 2005, while the plan was signed
by Mrs. O'Brien on July 5, 2005.  The Statement of Rights and
Responsibilities was signed by both Mrs. O'Brien and Mr. Gillet
on July 8, 2005.

3

1  are the payments to the chapter 13 trustee; payments to the
2  debtor's attorney; and 100% to the unsecured claims scheduled as
3  being $11,448.  In the "Additional Provisions" section of the
4  plan, the debtor states "Debtor intends to use exempt funds of
5  $101,140.49 held by the Kern County Sheriff's Department to fund
6  this plan."

7       This case was filed as merely one chapter in litigation
8  between Moving Parties, the debtor's husband Francis O'Brien
9  (their former attorney), and, now, the debtor.  Moving Parties
10 were all clients of Mr. O'Brien, a lawyer who represented them in
11 personal injury cases.  Moving Parties alleged that he had
12 violated numerous of the California Rules of Professional
13 Responsibility; had forged their signatures on settlement drafts
14 and other documents; had failed to pay their medical expenses
15 with settlement money; and had kept the settlement money for
16 himself.  Moving Parties filed suit against Mr. O'Brien in Santa
17 Barbara County Superior Court.

18      That state court action went to binding arbitration after
19 Mr. O'Brien produced a forged legal services agreement allegedly
20 signed by the creditors containing a binding arbitration clause.
21 The case against Mr. O'Brien was tried to an arbitrator in April
22 and June of 2004.  Judge Slater, a retired superior court judge
23 who was serving as the arbitrator, found against Mr. O'Brien on
24 all causes of action including fraud, breach of fiduciary duty,
25 and conversion.  The arbitrator awarded compensatory and punitive
26 damages to Mr. and Mrs. Gholami in the amount of $200,313.28.  He
27 also awarded costs and attorneys fees of $34,756.60.  Restitution
28 for the other creditors was awarded as well.  Judgment against

4

Mr. O'Brien was entered in September 2004.  He was then served
with a notice to appear for a debtor's examination.  He never
appeared and an arrest warrant issued.  Mr. O'Brien then filed
bankruptcy on January 10, 2005.  He then voluntarily dismissed
his case.

In May 2005, the superior court issued a writ of execution
in the amount of $250,232.88, which was served on Wells Fargo
Bank.  The writ garnished $101,140.49 of money in an account in
the name of Mrs. O'Brien.  Before the funds could be delivered to
Moving Parties' attorney, Mrs. O'Brien filed her own chapter 13
case on May 12, 2005.  That case was dismissed on July 6, 2005.

Legal Issues.

The debtor in this case is taking the position that the
debts of her husband arising through his law practice are not
shared by her and she is not responsible for them.  Therefore, it
is her view that they need not be listed on her schedules.  At
the April 6, 2005 and August 25, 2005 meetings of creditors, she
testified that she had been married to Mr. O'Brien for eleven
years, a time that includes the period when the transactions
resulting in the judgment of favor of Moving Parties took place.
Mrs. O'Brien has made numerous inconsistent statements about her
involvement with her husband's law practice.  At the April 6,
2005 meeting of creditors, she testified she knew nothing about
his law practice or who was paying the bills.  However, she was a
co-signor on the firm's bank account with Wells Fargo Bank and on
bank account applications was listed as the office manager.  She
signed at least 52 client trust account and expense account
checks for the firm.  In an application to refinance the loan on

5

the residence, Mrs. O'Brien stated her income as being $12,000 per month.  This is in March 2005.  It is this refinance that resulted in the funds that were garnished by the writ of execution.

According to Mrs. O'Brien, the residence is her sole and separate property.  However, the evidence before the court is that the residence was purchased by Mr. O'Brien in 1991 before his marriage to Mrs. O'Brien.  In 1994, he executed a quitclaim deed to a Mary Morrison.  The deed indicates the property was a gift.  In 1999, Ms. Morrison executed a quitclaim deed transferring title to Mr. O'Brien's parents.  That deed states $1 was paid for the property.  In 2003, Mr. O'Brien's parents executed a deed transferring title to the debtor in this case. In September 2004, Mr. O'Brien executed an Interspousal Transfer Grant Deed, granting the residence to Mrs. O'Brien as her sole and separate property.

In short, the chain of title transfers as to the residence creates a strong inference that Mr. O'Brien has transferred the property at various times to Ms. Morrison, his parents, or his present spouse, in order to conceal it from the reach of his creditors.  Mr. O'Brien made the mortgage payments on the house all along until the March 2005 refinance with Washington Mutual. He has maintained homeowner's insurance on the residence in his name.

Mrs. O'Brien's testimony in connection with this chapter 13 case and in connection with this motion is inconsistent.  Her statements about her responsibilities at the law office are inconsistent.  The statements about her income are inconsistent.

1   Her statements about her purchase of the residence are

2   inconsistent and contradictory.

3        California Family Code § 1000 provides:

4        "(a) A married person is not liable for any injury or damage
        caused by the other spouse except in cases where the married
5        person would be liable therefor if the marriage did not
        exist.

6

7        (b) The liability of a married person for death or injury to
        person or property shall be satisfied as follows:

8            (1) If the liability of the married person is based
        upon an act or omission which occurred while the married
9        person was performing an activity for the benefit of the
        community, the liability shall first be satisfied from the
10       community estate and second from the separate property of
        the married person.

11

12           (2) If the liability of the married person is not based
        upon an act or omission which occurred while the married
13       person was performing an activity for the benefit of the
        community, the liability shall first be satisfied from the
14       separate property of the married person and second from the
        community estate."

15       Assuming that Mr. O'Brien's adjudicated fraud was

16  perpetrated without Mrs. O'Brien's participation, the question is

17  then whether a community debt was created.  If the activity was

18  performed for the benefit of the community, the liability was

19  first satisfied from the community estate and second from the

20  separate property of the married person.  If the obligation to

21  Moving Parties here was not a debt incurred for the benefit of

22  the community, then it should first be satisfied from Mr.

23  O'Brien's separate property and then from the community estate.

24       Regardless, the community estate of Mrs. O'Brien is liable

25  for the obligation, either primarily or secondarily.  The court

26  need not decide which is correct here.

27       There are sufficient indicia of bad faith in this chapter 13

28  case and plan to dismiss the case.  The debtor ultimately has the

7

1  burden of showing that the case was filed and the plan proposed
2  in good faith.  To determine whether the debtor has met that
3  burden, the court applies a totality of the circumstances test.
4  The court considers the following factors:

5       (1) Whether the debtor misrepresented facts in the petition,
6  unfairly manipulated the Code, or filed the petition or plan in
7  an inequitable manner;

8       (2) The history of filings and dismissals;

9       (3) Whether the debtor filed the petition with the attempt
10 to defeat other litigation; and

11      (4) Whether there is other egregious behavior.
12 In re Leavitt, 171 F.3d 1219, 1224 (9th Cir. 1999).

13      Here, the debtor has failed to demonstrate her good faith.
14 The debtor has misrepresented facts in the petition.  The
15 petition states that her only income is her husband's disability
16 and also states that she is entitled to $1,500 per month for some
17 unnamed reason.  However, at the hearing, the debtor's counsel
18 acknowledged that the application was pending.  The petition
19 shows only slightly over $11,000 in unsecured prepetition
20 obligations; an income of $3,000 per month for both spouses; car
21 leases of over $1,400 per month on late model, low mileage cars;
22 and real property payments of $2,389.05.  The car payments and
23 the real property payments alone exceed the debtor's scheduled
24 income.  The debtor would have the court believe that she will
25 fund the $11,000 of unsecured debt with the $101,140.49 obtained
26 from refinance of the property.  The debtor does not intend to
27 pay Moving Parties at all, believing that they are not creditors.
28      Chapter 13 is designed for persons with regular income.

8

1    According to Ms. O'Brien's bankruptcy schedules she has no
2    regular income.  It is also true that this statement in the
3    schedules made under penalty of perjury contradicts other
4    statements she made within the year that she filed bankruptcy,
5    including a statement that her income is $12,000 per month.

6        This is the third case filed by one or the other of the
7    O'Briens in their attempts to keep Moving Parties from executing
8    on the judgment against Mr. O'Brien.  It is clear that Mrs.
9    O'Brien filed the petition with the intent to defeat the
10   creditors of Mr. O'Brien.  The pattern of transfers of the real
11   property and the refinance of that real property by Mrs. O'Brien
12   create a strong implication that the property was either
13   community property or the sole and separate property of Mr.
14   O'Brien and that he placed it in the name of others, most
15   recently in the name of Mrs. O'Brien to avoid the reach of his
16   creditors.

17       Under all these facts and circumstances, the court is unable
18   to find that this petition was filed in good faith.  Therefore,
19   the court will dismiss the petition.  The dismissal is without
20   prejudice.  The court reaches no conclusion about whether a
21   bankruptcy case filed by this debtor that fully and fairly
22   disclosed and listed her assets and liabilities would be in good
23   faith.  As the case will be dismissed, it is not necessary to
24   reach whether the motion for relief from stay should be granted.

25       Moving Parties may submit an appropriate form of order.
26   DATED: January 13, 2006.

27

28                              WHITNEY RIMEL, Judge
                                United States Bankruptcy Court

9

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA ) 
) ss.
COUNTY OF FRESNO )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On January 13, 2006, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Phillip Gillet, Jr.
1705 27th Street
Bakersfield, California 93301-2807

Jeffrey S. Young, Esq.
1307 State Street, Second Floor
Santa Barbara, California 93101

Robert H. Brumfield, III, Esq.
3434 Truxtun Avenue, Suite 150
Bakersfield, California 93301

M. Nelson Enmark, Esq.
3447 W. Shaw Avenue
Fresno, California 93711

Office of the United States Trustee
1110 U. S. Courthouse
1130 O Street
Fresno, California 93721

I certify (or declare), under penalty of perjury, that the foregoing is true and correct.  Executed on January 13, 2006, at Fresno, California.

_____
Kathy Torres, PLS

10